**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                                    No. 96-4117

ORVILLE ISAAC WRIGHT,
Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, District Judge.
(CR-95-76)

Submitted: January 21, 1997

Decided: February 7, 1997

Before MURNAGHAN and HAMILTON, Circuit Judges, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Lewis A. Thompson, III, BANZET, BANZET & THOMPSON,
P.L.L.C., Warrenton, North Carolina, for Appellant. Janice McKenzie
Cole, United States Attorney, Christine Witcover Dean, Assistant
United States Attorney, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Orville Wright appeals from a district court judgment entered pursuant to a jury verdict finding him guilty of violating 21 U.S.C.A. § 841(a)(1) (West 1981 & Supp. 1995), and 21 U.S.C. § 846 (1994). Wright challenges only his sentence on appeal, contending that the district court erred in determining the quantity of drugs attributable to him, and by finding him to be a manager or supervisor under U.S.S.G. § 3B1.1(c). See U. S. SENTENCING GUIDELINES MANUAL § 3B1.1(c) (1995).

The district court found that Wright was responsible for at least 50 kilograms of cocaine. Testimony from the trial and sentencing hearing tended to prove that Wright received over 50 kilograms from a single source, a dealer named Roy Finch. This figure was largely predicated on Finch's testimony regarding the amounts he supplied to Wright and to others. At the sentencing hearing, Wright's counsel attempted to show that the quantity of drugs the Government claimed that Wright received from Finch was exaggerated. His strategy was to elicit testimony showing that Finch provided a sufficient quantity of drugs to his other customers that he could not have provided 50 kilograms of cocaine to Wright. The district court, however, prohibited the questioning based on the Government's relevancy objection.

Wright contends that the court's action deprived him of the opportunity to rebut the Government's case concerning the amount of drugs attributable to him. We disagree. First, the amount of drugs which Finch distributed was unclear, so there was no accurate base point from which to subtract Finch's sales to other customers. Second, even using as a base point the lowest figure that Wright could possibly rely on to represent Finch's total sales--the 150 kilogram total upon which Finch's own sentence was based--the evidence of record failed to support a finding that Wright did not receive at least 50 kilograms of that total.

2

Finch testified to having only four or five customers. He left no doubt that the bulk of his sales were to Wright and one other person, Joseph Neal, who received drug quantities substantially equal to those of Wright. Neal's testimony, and that of a Special Agent who interviewed both Neal and Finch, established that Neal received over 50 kilograms of cocaine from Finch. Moreover, Finch testified that Wright and Neal were his only "kilo" customers, and that he provided far lesser quantities of drugs--ranging from one-eighth of an ounce to a few ounces--to his other customers, with the exception of a single occasion where he provided one kilo to another customer.

Even if Wright could have presented some scenario by which his drug quantities from Finch would total less than 50 kilograms, other testimony in this case established that Wright was involved with substantial drug sales aside from Finch. The district court could have easily attributed one or two dozen additional kilograms to Wright based on this testimony. Hence, viewing the evidence relating to drug quantity as a whole, we find no basis for concluding that Wright's strategy had any chance of success. We therefore conclude that the district court did not err by prohibiting questions asked to support this strategy, or in attributing at least 50 kilograms of cocaine to Wright.

Wright also contends that the district court erred by including a two-level adjustment to his offense level for being a manager or supervisor within the meaning of section 3B1.1(c) of the guidelines. Again, however, we find no error. The court's finding was based on Wright's arrangement with Linda Lassiter. The evidence established that Wright "fronted" drugs to Lassiter, who then sold the drugs and returned all proceeds to Wright. Lassiter testified that she gave Wright the proceeds because he told her to do so.

The district court considered but rejected at the sentencing hearing Wright's position that he did not exercise control over Lassiter inasmuch as he did not tell her when, how, or to whom to sell drugs. We agree with the district court that this particular type of control was not a predicate to imposing a two-level adjustment under section 3B1.1(c). Rather, the fact that Wright provided Lassiter drugs on credit, and required her to return all proceeds to him, established that Lassiter was not a typical customer but was instead substantially con-

3

trolled by Wright. This control, and the fact that Wright received all the proceeds, justified the imposition of the adjustment. See § 3B1.1(c) (application note 4).

We therefore affirm the district court judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED

4